**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAVID BENRIMON FINE ART LLC,

        PLAINTIFF,

    v.

GALERIE SON, MIHYUN SON, AND MAX KOFFLER,

        DEFENDANTS.

23-cv-02614-JHR

---

### DECLARATION OF LUKE NIKAS

I, Luke Nikas, hereby declare pursuant to 28 U.S.C 1746 that:

1.      I am a Partner at Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for Plaintiff David Benrimon Fine Art LLC. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

2.      I submit this declaration in response to the Court's June 25, 2025 Order (Dkt. No. 34) requiring Plaintiff to file a declaration and supporting documentation to demonstrate the attorney's fees and out-of-pocket costs it has incurred in connection with this action.

### QUINN EMANUEL

3.      A total of ten Quinn Emanuel employees performed billable work across the 16 months that this matter has been pending: six attorneys (Luke Nikas, Maaren Shah, Paul Maslo, Michael Nosanchuk, Alexandra Weissfisch, and Timo Merle), three managing clerks (Diana Cordoba, Matthew Woods, and Robert Andon), and one paralegal (Michael Alexander).

4.      The rates billed by these employees over the relevant period fall within the following ranges:

| Employee | Position | Hourly Rate |
| --- | --- | --- |
| Luke Nikas | Partner | $1,590-1,735 |
| Maaren Shah | Partner | $1,580 |
| Paul Maslo | Of Counsel | $1,440 |
| Michael Nosanchuk | Associate | $1,195-1,395 |
| Alexandra Weissfisch | Associate | $880-1,060 |
| Timo Merle | Associate | $1,280 |
| Diana Cordoba | Managing Clerk | $620 |
| Matthew Woods | Managing Clerk | $620 |
| Robert Andon | Managing Clerk | $580 |
| Michael Alexander | Paralegal/Managing Clerk | $515-580 |

5.      Attached as **Exhibit A** are true and correct copies of the biographies of the attorneys who worked on this matter, which reflect each attorney's experience and qualifications.

6.      Quinn Emanuel is widely recognized as one of the most successful litigation firms in the world.  For example:

- The firm has been named the "Most Feared Law Firm Globally."  Based on a survey of over 350 major corporations, Quinn Emanuel has, for over eleven years, been recognized by BTI Consulting as one of the "Fearsome Foursome," an elite group of law firms that "clients don't want to face on the other side."  For three years running, and a total of five times, the firm was named the most feared law firm in the world.
- Chambers & Partners awarded Quinn Emanuel "Commercial Litigation Law Firm of the Year" at the 2024 Chambers USA Awards.
- The American Lawyer awarded Quinn Emanuel "Litigation Department of the Year" at its 2023 Industry Awards.  This award recognizes Quinn Emanuel as the best litigation firm in the U.S.[1]

7.      Quinn Emanuel's art litigation practice is also top rated.  As described in Exhibit A, Luke Nikas, who is lead counsel in this matter, is Co-Chair of the firm's Art Litigation and Disputes Practice and has one of the most prominent and successful art litigation practices in the

---

[1] *Awards: Quinn Emanuel Urquhart & Sullivan, LLP*.  News & Events | Quinn Emanuel Urquhart & Sullivan, LLP, https://www.quinnemanuel.com/the-firm/news-events/#rootNodeId=1054&pageNumber=1&byNewsType=1748.

world.  Nikas is widely recognized as one of the top lawyers in the country and has been selected as a Law360 MVP and named to Lawdragon's list of the 500 Leading Lawyers in America, Lawdragon's list of the 500 Global Leaders in Crisis Management, Lawdragon's list of the 500 Leading Plaintiff Financial Lawyers in the category of Business Litigation, Lawdragon's list of the 500 Leading Global Entertainment, Sports & Media Lawyers, Lawdragon's list of the 500 Leading Litigators in America, Benchmark Litigation's "Under 40 Hot List," Crain's New York 40 Under 40, the New York Law Journal's list of Rising Stars, the Best Lawyers in America, and the Super Lawyers list by New York Super Lawyers.  He has been described in The Legal 500 as "whip-smart," in Lawdragon as a "litigation star," and in Chambers USA as "a sharp litigator and tough lawyer who knows how to do aggressive . . .  litigation when the stakes are high.  He is very good at what he does."  Chambers USA further states that "Luke is an exceptional attorney," a "really, really smart" and "fearsome lawyer" who "sees the big picture and . . . [is] a great lawyer to have on your side," and is "absolutely amazing on his feet; he can come into court and have no notes.  His trial experience and ability to convey and argue for clients is just top-notch."

8.      As further described in Exhibit A, Nikas has also been praised for his highly creative solutions in seemingly intractable cases: in a recent matter, Reuters lauded Nikas for his "uncommonly interesting lawyering" and called his strategy a "pièce de résistance" and "surprise move" that "completely blindsided" his opponents.  He has been honored as a "Litigator of the Week" by The American Lawyer.  A prominent art publication called him one of the most "highly influential" art lawyers in the world after he led the defense in an art forgery case dubbed by ArtNews as "The Art Trial of the Century."  The media has called him a "star art litigator," he was awarded the 2021 and 2024 "Art Lawyer of the Year" by Best Lawyers, he's been described in the New York Times as a "top art lawyer," and Reuters has observed that "[i]f there's a high-stakes

3

fight in the art world, there's a good chance . . . Luke Nikas is front and center." Chambers USA adds that "Luke is known for being the go-to person for high-level work" in art cases and further noted, "He is a superstar." Nikas is also a professor at Harvard Law School, where he created and teaches Harvard's course on Art Law Litigation.

<strong><u>ATTORNEYS' FEES</u></strong>

9.    Our legal fees are detailed in the invoices that were contemporaneously prepared during this action. True and correct copies of those invoices are attached as **Exhibit B** and have been redacted to remove confidential and privileged information as well as entries pertaining to unrelated matters.

10.    Throughout the life of this matter, a total of 74.4 hours were billed by attorneys and 4.2 hours by support staff, for a total of 78.6 hours. At the onset, 23 hours were billed in March 2023 by attorneys reviewing the case background, preparing letters, meeting with the client regarding case strategy, and drafting and filing the complaint. (Ex. B at 2.) From April to June 2023, 16.9 hours were billed, attributable in large part to service of the complaint on foreign defendants, drafting letters to Galerie Son, and team strategy conferences. (Ex B. at 6, 7, 10.)

11.    July and August 2023 required continued strategy meetings, review of documents, and acquiring translation services and a Hague vendor for service, for a total of 2.6 hours. (*Id.* at 19, 22.) In September and October 2023, 11.6 hours were billed preparing a partial settlement agreement and release in exchange for artwork and drafting a letter to the Court in response to the October 17 Order to Show Cause, as well as a declaration of service. (Dkts. 13-15; Ex. B at 26, 31.) In November 2023, counsel followed up regarding the status of the artwork delivery to Galerie Son, which took 0.2 hours. (Ex. B at 35.) In December 2023 and January 2024, counsel reviewed the partial settlement terms and release, constituting .6 hours. (*Id.* at 39, 43.) Finally, from April

to June 2024, counsel submitted a proposed Clerk's Certificate of Default and moved for default judgment (Dkts. 19, 23); 23.7 hours were spent drafting, revising, filing, and serving the motion for default judgment on all parties and filing a subsequent motion to seal.  (Ex. B 46, 47, 51, 55.)

12.    These activities generated a total of $93,036 in attorneys' fees, which the client paid.  A total of $2,886.37 in costs were also accumulated in this matter.  Those costs are included in the provided invoices and are attributable to legal research services, copy and word processing services, mailing and courier services, and translation of documents.

13.    Quinn Emanuel's hourly rates and the amounts billed are reasonable.

14.    *First*, the rates are Quinn Emanuel's customary hourly rates actually paid by clients.

15.    *Second*, Quinn Emanuel possesses highly specialized skills, experience, and a national reputation for being one of the leading firms in the world in the field of complex commercial litigation, including art litigation.

16.    *Third*, Quinn Emanuel's hourly rates are consistent with the rates for similar services by firms of comparable size and reputation.

17.    *Finally*, in recognition of the qualifications of Quinn Emanuel's attorneys and the award-winning, high-level quality of its representation, courts across the country have repeatedly and consistently held that Quinn Emanuel's hourly rates are reasonable.  *See, e.g.*, *Rudi v. Wexner*, 2022 WL 1682297, at *5 (S.D. Ohio May 16, 2022) ("The Court finds that [Quinn Emanuel's] hourly rates are reasonable under the circumstances of this particular [contingency] case. Accordingly, this factor weighs in favor of granting the requested fee."); *Blattman v. Siebel*, No. 15-cv-530 (CFC) (D. Del. Dec. 6, 2021) (ECF No. 434) (finding attorneys' fees requested by Quinn Emanuel reasonable and declining to reduce the fee award by the requested percentage); *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 3:19-cv-4238 (MMC) (RMI) (N.D. Cal. Dec. 17, 2020)

(ECF No. 376 at 7) (finding that Quinn Emanuel's fees are reasonable because its attorneys "are experienced and seasoned practitioners; that they are employed at a large international firm with a highly regarded reputation; [and] that they have highly specialized … backgrounds"); *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 17-cv-14 (JFB) (SRF) (D. Del. Dec. 16, 2019) (ECF No. 1162 at 25-28) (finding that Quinn Emanuel's "hourly rates . . . [are] reasonable"); *H&N Mgmt. Grp. v. Couch*, 2019 WL 6620822, at *6 (Del. Ch. Dec. 4, 2019) (finding that Quinn Emanuel's attorneys' fees were "fair and reasonable"); *Transweb, LLC v. 3M Innovative Props. Co.*, No. 2:10-cv-04413 (FSH) (D.N.J. Sept. 24, 2013) (ECF No. 567 at 33) (Special Master's ruling that Quinn Emanuel was a "premier litigation firm" and that "the hourly rates charged by Quinn Emanuel are within the range of prevailing rates for premium quality counsel"); *Riverside Cnty. Dept. of Mental Health v. A.S.*, No. 5:08-cv-503 (ABC) (C.D. Cal. Feb. 22, 2010) (ECF No. 123) (awarding full amount of attorneys' fees sought for work performed by Quinn Emanuel); *In re Am. Home Mortg. Hldgs., Inc.*, No. 07-11047 (Bankr. D. Del. Apr. 14, 2008) (ECF No. 3695) (finding attorneys' fees requested by Quinn Emanuel were reasonable); *Bistro Executive, Inc. v. Rewards Network, Inc*., No. 2:04-cv-4640 (CBM) (C.D. Cal. Nov. 19, 2007) (ECF No. 357 at 6-8) (finding Quinn Emanuel's attorney and staff rates and hours were reasonable).

18.    Quinn Emanuel made every reasonable effort to minimize the legal fees and costs incurred in the prosecution of this action.

## CONCLUSION

19.    For the above reasons, Plaintiff should be awarded $95,922 in attorneys' fees and costs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York on July 2, 2025.

*/s/ Luke Nikas*
Luke Nikas