```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__08/08/2025__
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| David Benrimon Fine Art LLC, |
| **Plaintiff,** |
| **-against-** |
| Galerie Son, Mihyun Son and Max Koffler, |
| **Defendants.** |

**23-cv-02614 (JHR) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JENNIFER H. REARDEN, UNITED STATES DISTRICT JUDGE:**

Following the grant of the motion by Plaintiff David Benrimon Fine Art LLC ("Plaintiff" or "Benrimon Fine Art") for a default judgment against Defendants Galerie Son, Mihyun Son ("Mihyun") and Max Koffler ("Koffler") (collectively, "Defendants") (6/25/25 Order, ECF No. 32), this action was referred to the undersigned for an inquest on damages. (*See id*.; *see also* Order of Ref., ECF No. 33.)

For the reasons set forth below, it is respectfully recommended that the Court enter judgment against Defendants, as set forth in the Conclusion below.

**BACKGROUND**

**I.    Established Facts As A Result Of Defendants' Default[1]**

Benrimon Fine Art[2] is a limited liability company that operates an art gallery in New York City. (*See* Compl., ECF No. 1, ¶ 5; Benrimon Decl., ECF No. 37, ¶¶ 2-3.) Galerie Son is a German corporation that operates an art gallery in Germany. (*Id*. ¶ 6.) Mihyun, a citizen of Germany, is the owner of Galerie Son. (Compl. ¶ 7; Benrimon Decl. ¶ 4.) Koffler, a citizen of Germany, is the director of Galerie Son. (Compl. ¶ 8; Benrimon Decl. ¶ 4.)

On June 10, 2022, Benrimon and Galerie Son entered into a contract for the sale of the painting, *Sunrise Sunset*, 2022, by Joel Mesler (the "Mesler Sunset Work"). (Compl. ¶ 13.) The price of the Mesler Sunset Work was $320,000.00. (*Id.* ¶¶ 13-14.) By the terms of the sale, the buyer's full payment was due upon transmission of the invoice. (*Id.* ¶ 16.) Title to the Mesler Sunset Work would not transfer until the seller received full payment from the buyer. (*Id.*)

Benrimon delivered the Mesler Sunset Work, but Galerie Son failed to make full payment. (Compl. ¶¶ 17-18.) Benrimon "repeatedly demanded" that Defendants return the Mesler Sunset Work. (*Id.* ¶ 20.) Koffler stated that Defendants did not have enough money to pay for the Mesler Sunset Work, but refused to return it. (*Id.*)

Galerie Son, Mihyun and Koffler worked together to sell the Mesler Sunset Work to one or more third parties. (*Compl.* ¶ 21.) Galerie Son, Mihyun and Koffler absconded with the

---

[1] In light of Defendants' default, the Court accepts Plaintiff's allegations as true, except for those pertaining to damages. *See Finkel v. Romanwicz*, 577 F.3d 79, 84 (2d Cir. 2009).

[2] The joint owners of Benrimon Fine Art are David Benrimon and Liliane Benrimon, who are citizens of the State of New York, through a New York partnership in which they are the sole partners. (Benrimon Decl. ¶ 3.)

proceeds from their unlawful sale of the Mesler Sunset Work instead of using those proceeds to pay Benrimon Fine Art. (*Id*.)

On February 3, 2023 and February 16, 2023, Benrimon Fine Art's counsel emailed Defendants demanding payment for or return of the Mesler Sunset Work. (Compl*. ¶* 23.) On March 2, 2023, Plaintiff sent a letter demanding payment for or return of the Mesler Sunset Work. (*Id.* ¶ 24.) Defendants have failed to respond, make full payment or return the Mesler Sunset Work. (*Id.*)

## II.    Procedural History

On March 28, 2023, Plaintiff filed the Complaint in this action. (*See* Compl.) On September 20, 2023, Defendants Mihyun and Koffler were served. (Mihyun Cert. of Service, ECF No. 17; Koffler Cert. of Service, ECF No. 18.) On October 4, 2023, Defendant Galerie Son was served. (Galerie Son Cert. of Service, ECF No. 16.)

On May 30, 2024, the Clerk of Court entered a Certificate of Default against Galerie Son, Mihyun and Koffler. (Certificate of Default, ECF No 21.) On June 6, 2024, Plaintiff moved for a partial default judgment.[3] (Pl.'s Not. of Mot., ECF No. 23.) On June 25, 2025, District Judge Rearden granted Plaintiff's motion and this action was referred to the undersigned for an inquest on damages. (See 6/25/25 Order; Order of Ref.)

---

[3] The reason why Plaintiff only sought a partial default judgment is because, in October 2023, the parties entered into a partial settlement agreement with respect to Plaintiff's claims concerning a painting by Aboudia, which was another painting that was at issue in the Complaint. (*See* Nikas 5/10/24 Decl., ECF No. 20, ¶ 4; Partial Settlement Agmt., ECF No. 25-2.)

**JURISDICTION AND VENUE**

The Court has subject matter and personal jurisdiction over this matter. A federal court has subject matter jurisdiction where, as here, the amount in controversy exceeds $75,000.00 and the controversy is between citizens of a state and citizens of a foreign state. *See* 28 U.S.C. § 1332(a)(2). A limited liability company "takes the citizenship of each of its members." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (citing *Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000)). Benrimon Fine Art is considered a New York citizen based upon the citizenship of David Benrimon and Liliane Benrimon. (*See* footnote 2, *supra*.) Defendant Galerie Son is a German corporation and Defendants Mihyun and Koffler are German citizens. (*Id.*) Therefore, there is complete diversity of citizenship between Plaintiff in New York and Defendants in Germany and the Court has subject matter jurisdiction.

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964)). In the present case, the relevant agreement states that, in the event of litigation, the "state and federal courts located in New York County, New York" will have exclusive jurisdiction and that both parties consent to "*in personam* jurisdiction of the Courts [of New York]." (Agmt., ECF No. 1 Ex. A, at PDF p. 3.) Therefore, the Court has personal jurisdiction over Defendants.

Nevertheless, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied*." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987); *see also* 5B Charles A. Wright & Arthur R.

4

Miller, *Federal Practice and Procedure*, § 1353 (3d ed. 2004) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment. *See Sheldon v. Plot Com.*, No. 15-CV-05885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) ("failure to adequately prove proper service of court documents under Rule 4 bars the entry of a default judgment"), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016*); Lliviganay v. Cipriani 110 LLC*, No. 09-CV-00737 (LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (lack of proof of proper service "is an independent obstacle to a default judgment").

Plaintiff states that Defendants were served in accordance with German law under the Hague Service Convention. (Mem. in Support of Mot., ECF No. 24 at 1.) An individual in a foreign country may be served by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention of the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). Fed. R. Civ. P. 4(f)(1). A foreign corporation may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual[.]" Fed R. Civ. P. 4(h)(2). "[C]ompliance with the Hague Service Convention is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention." *Choi v. Kim*, No. 24-CV-06526 (JGK), 2025 WL 1267712, at *2 (S.D.N.Y. May 1, 2025) (citation omitted). Germany is a signatory to the Hague Convention. *Grp. One Ltd. V. GTE GmbH*, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021).

The Hague Convention provides for several methods of service, including "service through the Central Authority of member states[.]" *Burda Media, Inc., v. Viertel*, 417 F.3d 292, 300 (2d

Cir. 2005) (citing Hague Convention arts. 5-10, Nov. 15, 1965, 20 U.S.T. 361)). In the present case, Plaintiff provided signed certificates stating that each Defendant was served in conformity with Article 6 of the Convention. (*See* Galerie Son Cert. of Service; Mihyun Cert. of Service; Koffler Cert. of Service.) The receiving authority of each certificate is listed as Senate Department for Justice and Consumer Protection in Berlin, Germany. (*Id.*) The Court finds that service of process was satisfied.

Venue is proper in this Court based upon the forum selection clause contained in the relevant agreement. A forum selection clause in a contract constitutes consent to venue in the chosen forum. *See Remsen Funding Corp. v. Ocean W. Holding Corp.*, No. 06-CV-15265 (DLC), 2007 WL 3254403, at *4 (S.D.N.Y. Nov. 1, 2007) ("By agreeing to the language of the forum selection clause, the defendant consented to laying venue, as well as personal jurisdiction, in this district." (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)).

## LIABILITY

"[E]ven in the context of a default judgment, a district court is . . . required to determine whether [the plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 264 (S.D.N.Y. 2017) (citing *Finkel*, 577 F.3d at 84); *see also Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) ("[T]o determine whether [plaintiff's] complaint justified the entry of a default judgment, we must consider whether her allegations 'constitute a valid cause of action.'" (citation omitted)).

Plaintiff alleges multiple claims. (Compl. at 4-7.) As discussed below, the Court finds liability for breach of contract against Galerie Son and liability for conversion against all Defendants. The Court does not reach the additional claims since Defendants' liability for the

6

total damages sought is established on the breach of contract claim against Defendant Galerie Son and the conversion claim against all Defendants. *See Raymond James & Assocs, Inc. v. Vanguard Funding LLC*, No. 17-CV-03327 (VSB) (SDA), 2018 WL 8758763, at *4 (S.D.N.Y. Apr. 16, 2018), *report and recommendation adopted*, 2019 WL 2281275 (S.D.N.Y. May 28, 2019). The breach of contract and conversion claims are considered in turn.

I.    **Breach of Contract**

Plaintiff alleges a claim for breach of contract against Galerie Son. (*See* Compl. ¶¶ 25-30.) To establish a claim for breach of contract under New York law, the plaintiff must plead, "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Meng v. New School*, 686 F. Supp. 3d 312, 316-17 (S.D.N.Y. 2023) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

In the present case, the record reflects that Plaintiff and Defendant Galerie Son entered into an agreement for sale of the Mesler Sunset Work subject to specified terms and conditions. (Agmt. at PDF p. 3; Compl. ¶ 13.) The invoice for the purchase of Sunrise Sunset "memorializes a binding, enforceable contract between the parties[.]" *See Demand Electric, Inc. v. Innovative Tech. Holdings,* LLC, 665 F. Supp. 3d 498, 505 (S.D.N.Y. 2023). Second, Benrimon delivered the Mesler Sunset Work to Galerie Son, performing its duties under the contract. (*See* Compl. ¶ 17.) Third, Galerie Son failed to pay for the Mesler Sunset Work under the agreement, thereby breaching the contract. (*See id*. ¶¶ 19, 23-24.) Finally, Plaintiff suffered damages because they are owed $320,000.00, the contract price of the Mesler Sunset Work. (*See id*. ¶¶ 14, 17.) Therefore, Defendant Galerie Son is liable to Plaintiff for breach of contract.

## II.  Conversion

Plaintiff alleges a conversion claim against all Defendants. (Compl. ¶¶ 31-39.) To state a claim for conversion, Plaintiff must plead that "(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (citations omitted).

Under the agreement in the present case, Plaintiff retained title to the Mesler Sunset Work until it received payment from Galerie Son. (Agmt. at PDF p. 3; Compl. ¶ 19.) When Defendants "worked together to sell the [Mesler Sunset Work] to one or more third parties[]" they were acting without authorization from Plaintiff. (Compl. ¶¶ 21-22.) By selling the property to a third party, Defendants exercised dominion over the Mesler Sunset Work. *See Hicks v. Leslie Feely Fine Art, LLC*, No. 20-CV-01991 (ER), 2021 WL 982298, at *8 (S.D.N.Y. Mar. 16, 2021) (stating that defendant exercises dominion by "assuming to sell and dispose of the property as their own" (quoting *State v. Seventh Regiment Fund*, 98 N.Y.2d 249, 260 (2002) (cleaned up))). Benrimon Fine Art "repeatedly demanded" return of the Mesler Sunset Work. (Compl. ¶ 20.) However, Defendants refused to return the Mesler Sunset Work. (*Id.*) Therefore, Plaintiff has established liability against all the Defendants on its claim for conversion.[4]

---

[4] Even assuming, *arguendo*, that Plaintiff only established the liability of Galerie Son on Plaintiff's claim for conversion, and not the liability of Mihyun and/or Koffler, these individual Defendants would be liable to Plaintiff for aiding and abetting Galerie Son's conversion for the reasons set forth in Plaintiff's moving memorandum. (*See* Pl.'s 6/3/24 Mem. at 10-11.)

**DAMAGES**

As the liability of Defendants has been established, the Court now turns to the amount of damages to award. Although a party's default is viewed as a concession of all well-pled allegations of liability, it is not considered an admission of damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Am. Jewish Comm. v. Berman*, No. 15-CV-05983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id*. Plaintiffs "bear the burden of establishing their entitlement to recovery and thus must substantiate their claims with evidence to prove the extent of their damages." *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 627 (S.D.N.Y. 2011) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

The Court finds that the documentary evidence submitted by Plaintiff is sufficient for the Court to determine damages. Moreover, no party has requested a hearing and Defendants have not contested Plaintiff's submissions. Accordingly, the Court does not find a hearing necessary and, instead, has conducted the inquest based solely on the materials filed by Plaintiff. *See JTH Tax LLC v. Sanchez*, No. 22-CV-06160 (AS) (JLC), 2023 WL 6813449, at *3 (S.D.N.Y. Oct. 16, 2023), *report and recommendation adopted*, 2023 WL 8936352 (S.D.N.Y. Dec. 27, 2023) (hearing unnecessary when plaintiff's submissions were uncontested and provided all information necessary to determine damages); *Reilly v. Plot Commerce*, No. 15-CV-05118 (PAE) (BCM), 2016

9

WL 6837895, at *2 (S.D.N.Y. Oct 31, 2016) (conducting inquest "based solely upon the materials submitted by plaintiff" when neither party requested hearing and defendant did not submit any written materials).

Plaintiff seeks to recover the unpaid contract price of the Mesler Sunset Work as compensatory damages, as well as pre-judgment interest, attorneys' fees and costs and post-judgment interest. (*See* Proposed Default J.; Pl.'s 6/3/24 Mem., ECF Nos. 24 & 27, at 13.) These are considered in turn.

## I.      Compensatory Damages

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184-85 (2d Cir. 2007) (citing *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 384 (2d Cir. 2006)). The "non-breaching party is entitled to the payment it is due under the terms of the contract, less the payment it has already received and the cost to it to perform the remainder of the contract." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 40-41 (2d Cir. 2009). If the contract in the present case had been performed, Plaintiff would have received $320,000.00 as payment for the Mesler Sunset Work. (*See* Agmt.) Plaintiff has not received any payments and there is no cost to perform the remainder of the contract since the Mesler Sunset Work was already delivered to Defendants. (*See* Compl. ¶¶ 17, 20, 23-24.) In addition, "[d]amages for conversion are measured by the value of the property at the time of conversion[.]" *Andrews v. 27 Red Music Publ'g, LLC*, No. 15-07544 (AJN), 2019 WL 199893, at *6 (S.D.N.Y. Jan. 15, 2019) (citing *Kranz v. Town of Tusten*, 653 N.Y.S.2d 194, 195 (3d Dep't 1997)). At the time of conversion, the Mesler Sunset Work was worth $320,000.00, as evidenced by the

10

contract price. (Agmt. at PDF p. 2.) Therefore, Defendants are liable to Plaintiff for $320,000.00 in compensatory damages.

## II.    Pre-Judgment Interest

Plaintiff also seeks pre-judgment interest. (*See* Proposed J.) "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to . . . property[.]" CPLR § 5001(a). The rate of interest is nine percent per annum. CPLR § 5004(a). Interest accrues "from the earliest ascertainable date the cause of action existed[.]" CPLR § 5001(b).

Plaintiff requests pre-judgment interest accruing from March 28, 2023. (*See* Proposed J.) Since this is the date that Plaintiff filed the Complaint, a cause of action existed for breach of contract, and thus the Court finds that interest may accrue from that date. It is respectfully recommended that pre-judgment interest at a rate of 9% per year be awarded from March 28, 2023 until the date judgment is entered, as Plaintiff requests.

## III.    Attorneys' Fees And Costs

Plaintiff seeks to recover attorneys' fees and costs. (*See* Proposed J.) Under New York law, attorneys' fees may be awarded to the prevailing party when authorized by an agreement between the parties. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). "The intent to provide for legal fees as damages for breach of contract must be 'unmistakably clear' in the language of the contract." *LoanCare, LLC v. Dimont & Assocs., LLC*, No. 22-CV-09286 (MMG), 2025 WL 951585, at *10 (S.D.N.Y. Mar. 28, 2025) (citing *Hooper Assocs. Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 492 (1989)). The contract in the present case states the following:

> In the event that any party institutes litigation to enforce the terms of this Agreement, . . . [the party] in whose favor the final judgment, decree, or final order

11

is entered, is entitled to recover from the non-prevailing party her, his, or its costs and expenses incurred in connection therewith, including reasonable attorneys' fees as determined by the Court, the costs of litigation, and actual out-of-pocket expenses.

(Agmt. at PDF p.3.) The language makes it unmistakably clear that the prevailing party may recover attorneys' fees. Accordingly, Plaintiff is entitled to collect reasonable attorneys' fees as determined by the Court.

### A.    Legal Standards Applied To Calculation Of Reasonable Attorneys' Fees

In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of the hours reasonably expended and a reasonable hourly rate, which is often called the "lodestar" method. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). In calculating the "presumptively reasonable fee," the court looks to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. *Id*. at 184. "For prevailing parties with private counsel, the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is reasonable." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15-CV-00211 (LGS), 2024 WL 1116090, at *6 (S.D.N.Y. Mar. 13, 2024) (citing *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001)).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A reasonable rate is generally the prevailing market rate for counsel of similar experience and skill to the fee applicant's counsel. *See Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005). In deciding what constitutes a reasonable rate, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."

12

*Id*. "The relevant community to which the court should look is the district in which the case was brought." *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citation omitted); *see also Arbor Hill*, 522 F.3d at 190 (hourly rate deemed reasonable if reflects prevailing hourly rate in community, defined as district where district court sits).

To support its request for attorneys' fees, a plaintiff must submit "contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In so doing, the court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).

A court should consider other case-specific variables when determining the amount of attorneys' fees to award, pursuant to the so-called *Johnson* approach, based upon the Fifth Circuit's decision in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 187 (citing *Johnson*, 488 F.2d at 717-19). "[W]hile a strict application of the *Johnson* method of calculating attorney's fees used by the Fifth Circuit is too imprecise and variable to be reliable, the twelve Johnson factors remain important tools for helping district

courts calculate the lodestar and, in exceptional cases, determining whether an enhancement or cut to the lodestar is warranted." *Lilly v. City of New York*, 934 F.3d 222, 233 (2d Cir. 2019).

"[T]he determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citation and internal quotation marks omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

**B.      Application**

The Court first considers the reasonable hourly rate for each timekeeper. Then, the Court considers the hours expended by each timekeeper, followed by a consideration of costs.

**1.      Reasonable Hourly Rates**

Plaintiff requests hourly rates ranging from $1,580.00 to $1,735.00 for partners Luke Nikas and Maaren Shah, both experienced litigators. (Nikas 7/2/25 Decl., ECF No. 35, at 2; Bios I, ECF No. 35-1, at PDF pp. 2-13.) Hourly rates exceeding $1,500.00 have been awarded in this district for partners at large law firms. *See Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 588 (S.D.N.Y. 2025) (awarding $2,035.00 per hour for partner at Gibson, Dunn & Crutcher in breach of contract claim where opposing party did not challenge reasonableness of hourly rates); *Syntel Sterling*, 2024 WL 1116090, at *6 (finding that $1,765.00 per hour for lead attorneys at Kirkland & Ellis was reasonable in complex intellectual property dispute). In the present case, the opposing parties do not challenge the rates because they are in default. (*See* Compl., ECF No. 1; Cert. of Default, ECF No. 21.) The hourly rates requested for Nikas and Shah, which are between

$1,580.00 and $1,735.00 per hour, align with rates awarded for partners in this district. The Court finds that these hourly rates are reasonable. *See Syntel*, 2024 WL 1116090, at *6.

In addition, Plaintiff requests $1,440.00 to $1,775.00 per hour for Of Counsel, Paul Maslo. (Nikas 7/2/25 Decl. at 2; Nikas 7/28/25 Decl., ECF No. 38, at 2.) Where Quinn Emanuel was not the lead counsel in a straightforward action, Maslo's rate was reduced from range of $1,010.00 to $1,330.00 per hour to $650.00 per hour in the context of a contested motion for attorneys' fees. *Nwosuocha v. Glover*, No. 21-CV-04047 (VM), 2025 WL 560846, at *6 (S.D.N.Y. Feb 20, 2025). By contrast, in the present case, Quinn Emanuel is Plaintiff's only counsel of record. Maslo is an experienced litigator who has been practicing since 2008, so he should be awarded an hourly rate consistent with Quinn Emmanuel being the lead counsel. (*See* Bios I at PDF pp. 14-17.) Maslo requested hourly rates of $1,440.00 in 2023 and 2024 and $1,775.00 in 2025. (Nikas 7/2/25 Decl. at 2; Nikas 7/28/25 Decl. at 2.) The Court finds that the $1,440.00 per hour is reasonable, *see Syntel Sterling*, 2024 WL 1116090, at *6, and recommends that such rate be applied to all of Maslo's hours.[5]

Next, Plaintiff requests hourly rates for associates ranging from $880.00 to $1,395.00. (Nikas 7/2/25 Decl. at 2.) Michael Nosanchuk, whose hourly rate ranges from $1,195.00 to $1,395.00, began practicing in 2019. (*Id.*; Bios I at PDF p. 19.) Alexandra Weissfisch, whose hourly rate ranges from $880.00 to $1060.00, began practicing in 2022. (Nikas 7/2/25 Decl. at 2; Bios I at PDF p. 21.) Timo Merle, whose hourly rate is $1,280.00, joined the firm in 2017. (Nikas 7/2/25

---

[5] The Court declines to recommend that Plaintiff be awarded $1,775.00 per hour for hours billed by Maslo in 2025, which is a rate that is higher than the hourly rates charged by the partners, Nikas and Shah.

Decl. at 2; Bios I at PDF p. 22.) Alex Lefkowitz, whose hourly rate is $1,035.00, began practicing in 2024. (Nikas 7/28/25 Decl. at 2; Bios II, ECF No. 38-2, at PDF p. 7.)

"Courts in this district have found hourly rates of $753 [at] the 'upper limit' of rates award[ed] for associates[.]" *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20-MISC-00023 (AT), 2021 WL 1353756, at *3 (S.D.N.Y. Apr. 12, 2021) (citing cases); *see also Al Thani v. Hanke*, Nos. 20-CV-04765, 20-CV-08181 (JPC), 2025 WL 1591379, at *5 (S.D.N.Y. June 5, 2025) (reducing hourly rates ranging from $830.00 to $960.00 by 20% for an Alston & Bird associate with 5 years of experience). Nevertheless, when the hourly rate was uncontested, a court in this district awarded $845.00 per hour for junior associates. *See Cerco*, 768 F. Supp. 3d at 588.

In the present case, the requested associate hourly rates are above the rates courts typically award. Considering the applicable legal standards, including the *Johnson* factors, the Court finds it appropriate to award an hourly rate of $880.00 (which is the lower end of the rate charged by Attorney Weissfisch) for all the associate hours in this action. Attorney Weissfisch billed the lion's share of the associate hours in this action, and in the Court's view, she (or an associate of similar experience), under the supervision of Nikas, Shah and/or Maslo, was capable of performing all the associate hours billed.

Finally, Plaintiff requests hourly rates for managing clerks and paralegals ranging from $515.00 to $620.00 per hour. (Nikas 7/2/25 Decl. at 2.) Paralegals may be awarded hourly rates ranging from $175.00 to $200.00 per hour. *See Reiffer v. N.Y.C. Luxury Limousine Ltd.*, No. 22-CV-02374 (GHW), 2023 WL 5052034, at *2 (S.D.N.Y. Aug. 8, 2023); *see also City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-00256 (LAK), 2021 WL 2453972, at *3 (S.D.N.Y. June 15, 2021) ("[C]ourts in this district typically cap [paralegal's] hourly rates at $150 to $200 per

hour." (citation omitted)). The hourly rate of "the Managing Clerk of King & Spalding's New York office" with "more than 43 years of experience" was reduced from range of $490.00 to $520.00 per hour to $200.00 per hour. *Macquarie Mex. Real Est. Mgmt. S.A. de C.V. v. Hoiston Int'l Enters., Inc.*, No. 20-CV-08383 (JGK) (KNF), 2021 WL 4952693, at *9 (S.D.N.Y. Oct. 1, 2021), *report and recommendation adopted*, 2021 WL 4951764 (S.D.N.Y. Oct. 25, 2021). In the present case, Plaintiff has not provided biographical information for the managing clerks and paralegals, so there is no basis for the court to award the requested hourly rates. (*See generally* Bios I; Bios II.) Therefore, the Court finds that the hourly rate for the managing clerks and paralegals should be reduced to $200.00 per hour.

### 2.      Reasonable Hours Expended

Plaintiff submitted invoices setting forth the hours worked on this case in 2023 and 2024, totaling to 78.6 hours. (*See* Invoice, ECF No. 35-2.) Plaintiff submitted a supplemental invoice setting forth the hours worked on this case in 2025, totaling 9.1 hours. (Suppl. Invoice, ECF No. 38-1.) "To determine the compensable hours, 'the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case.'" *Hancock v. I.C. Sys., Inc.*, 592 F. Supp. 3d 250, 256 (S.D.N.Y. 2022) (citing *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005)). The Court has reviewed the billing records and finds that the hours billed are reasonable, with one exception.

Certain hours, totaling 7.2 hours, billed by timekeepers Nikas, Maslo, Weissfisch and Nosanchuk between April 14, 2023 and July 10, 2023 relate to a different matter, referred to as "K Auction," which appears to involve the Mesler painting Untitled (On the Rocks), not the Mesler Sunset Work. (*See* Invoice at PDF pp. 6-7, 15, 19.) The Court finds that the hours expended on

this other matter are not recoverable in this action, so they are subtracted from the hours billed in the submitted invoices. Excluding these hours, the Court finds that the hours are reasonable. Accordingly, based upon the reasonable hourly rates set forth above and the reasonable hours determined by the Court, Plaintiff is entitled to recover $83,524.00 in attorneys' fees, as set forth in the table below:

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

| Timekeeper | Role | Hourly Rate | Hours Billed | Total per Timekeeper |
|---|---|---|---|---|
| Luke Nikas (2023-Feb. 2024) | Partner | $1,590.00 | 14.5 | $23,055.00 |
| Luke Nikas (Feb. 2024-2025) | Partner | $1,735.00 | 0.6 | $1,041.00 |
| Maaren Shah | Partner | $1,580.00 | 2.2 | $3,476.00 |
| Paul Maslo | Of Counsel | $1,440.00 | 5.7 | $8,208.00 |
| Michael Nosanchuk | Associate | $880.00 | 13.3 | $11,704.00 |
| Alexandra Weissfisch | Associate | $880.00 | 33.3 | $29,304.00 |
| Timo Merle | Associate | $880.00 | 0.6 | $528.00 |
| Alex Lefkowitz | Associate | $880.00 | 6.1 | $5,368.00 |
| Diana Codoba | Managing Clerk | $200.00 | 0.8 | $160.00 |
| Matthew Woods | Managing Clerk | $200.00 | 2 | $400.00 |
| Robert Andon | Managing Clerk | $200.00 | 0.2 | $40.00 |
| Michael Alexander | Paralegal/Managing Clerk | $200.00 | 0.7 | $140.00 |
| Anthony Staltari[6] | Managing Clerk | $200.00 | 0.5 | $100.00 |
| | | **Total** | 80.5 | $83,524.00 |

---

[6] Anthony Staltari, a managing clerk, billed hours, but is not mentioned in Nikas' declaration. (*Compare* Invoice at PDF pp. 2-3 *with* Nikas 7/2/25 Decl.) The hours are reasonable, so they are included in the fees calculation at the $200.00 hourly rate.

### 3.    **Costs**

Plaintiff seeks to recover $2,886.37 in costs, which "are attributable to legal research services, copy and word processing services, mailing and courier services, and translation of documents." (Nikas 7/2/25 Decl. at 5; *see also* Invoice at pp. 3, 7, 11, 23, 32, 47, 51, 55.)[7] "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). "[C]ourts, in their discretion, have awarded reasonable costs for various expenses, including computer research, . . . mailing and copying fees, and service and filing fees." *Tr. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. B&L Moving & Installation, Inc.*, No. 14-CV-09502 (JGK) (HBP), 2017 WL 934713, at *9 (S.D.N.Y. Mar. 9, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 1157118 (S.D.N.Y. Mar. 25, 2017). Courts also may award document translation fees when they are adequately supported by evidence. *See Rosas v. M and M LA Solucion Flat Fixed Inc.*, No. 23-CV-01212 (DG) (MMH), 2024 WL 4131905 (E.D.N.Y. Sept. 10, 2024). The terms of the parties' contract state that the prevailing party may recover its costs and expenses incurred in connection with litigation to enforce the agreement. (Agmt. at PDF p. 3.) Since the contract does not limit the recovery of costs and courts allow recovery of the types of costs requested, it is recommended that Plaintiff recover $2,886.37 in costs.

---

[7] The expenses in the invoice total to $3,384.05. (*See generally* Invoice.) The Court will limit its award to the costs requested in Nikas' declaration, *i.e.*, $2,886.37. (*See* Nikas 7/2/25 Decl. ¶ 12.)

**D.    Post-Judgment Interest**

Plaintiff seeks post-judgment interest. (*See* Pl.'s 6/3/24 Mem. at 13.) The Second Circuit has held that an award of post-judgment interest is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). By statute, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). It is respectfully recommended that post-judgment interest be awarded consistent with 28 U.S.C. § 1961.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for a default judgment be GRANTED and that a judgment be entered granting the relief sought in Plaintiff's proposed Default Judgment (ECF No. 26). Specifically, it is recommended that the Court award Plaintiff $320,000.00 in compensatory damages; pre-judgment interest on the compensatory damages at a rate of 9% per year accruing from March 28, 2023; $83,524.00 in attorneys' fees; $2,886.37 in costs; and post-judgment interest on the full amount of the judgment.

No later than Monday, August 11, 2025, Plaintiff shall serve copies of this Report and Recommendation by email upon the Defendants and file proof of service to the ECF docket.

Dated:      New York, New York
             August 8, 2025

_____

**STEWART D. AARON**
**United States Magistrate Judge**

\*        \*        \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rearden.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).